UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUSTIN ARMSTRONG | CIVIL ACTION |
| VERSUS | NO. 23-4306 |
| WRIGHT NATIONAL FLOOD INSURANCE COMPANY | SECTION M (4) |

**ORDER & REASONS**

Before the Court is a motion for summary judgment filed by defendant Wright National Flood Insurance Company ("Wright").[1] Plaintiff Justin Armstrong responds in opposition,[2] and Wright replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion because Armstrong's lawsuit was untimely filed.

**I.  BACKGROUND**

This case concerns an insurance coverage dispute in the wake of Hurricane Ida, which hit the Louisiana coast on August 29, 2021. Armstrong alleges that Wright issued a Standard Flood Insurance Policy ("SFIP") covering the property located at 402 Madie Lane in Slidell, Louisiana (the "property").[4] Wright provided flood insurance as a "Write-Your-Own" program carrier participating in the National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act of 1968, as amended.[5] The NFIP is administered by the Federal Emergency Management Agency ("FEMA").[6] The policy provided building damage coverage in the amount

---

[1] R. Doc. 23.
[2] R. Doc. 24.
[3] R. Doc. 26.
[4] R. Doc. 1 at 1.
[5] R. Docs. 1 at 2; 23 at 1.
[6] R. Doc. 23-1 at 4.

of $250,000, subject to a $1,250 deductible, and contents coverage in the amount of $100,000, also subject to a $1,250 deductible.[7]

On September 6, 2021, Armstrong notified Wright that the property sustained flood damage as a result of Hurricane Ida.[8] Wright assigned the claim to an independent adjustor, Colonial Claims Corporation ("Colonial"), which dispatched an NFIP authorized independent adjustor to the property.[9] On September 8, 2021, the adjustor inspected and photographed the property, determining that "a general condition of flooding, as defined by the SFIP, existed at the [p]roperty on August 29, 2021."[10] The adjustor prepared an estimate for building damages in the amount of $64,175.87, after applying the $1,250 deductible and non-recoverable depreciation, and an estimate for contents damages in the amount of $4,893.23, after applying the $1,250 deductible and depreciation.[11] The adjustor also prepared a proof of loss reflecting these amounts, which Armstrong signed on October 1, 2021.[12] Wright issued payments to Armstrong for the amounts stated in the October 1, 2021 proof of loss.[13]

On November 8, 2021, Wright issued to Armstrong a letter denying a portion of his claim.[14] Specifically, Wright denied the claim as to "2 rugs and the Mariah Collection in the living room," because "there was no physical damage to these items caused by the flood water."[15]

On April 29, 2022, Wright issued another denial letter to Armstrong.[16] This time, Wright stated that the engineer's "inspection concluded [that] the house has not been structurally damaged

---

[7] R. Doc. 23-7 at 1.
[8] R. Doc. 23-6 at 2.
[9] *Id.*
[10] *Id.*
[11] *Id.* at 2-3.
[12] *Id.* at 3 (citing R. Doc. 23-8).
[13] *Id.*
[14] *Id.* at 5 (citing R. Doc. 23-14).
[15] R. Doc. 23-14 at 1.
[16] R. Doc. 23-6 at 5 (citing R. Doc. 23-15).

2

by hydrodynamic, hydrostatic, buoyant, or frictional forces floodwaters."[17] The letter further recited Wright's conclusion that a leaning post and sloped ceiling beam were the "result of either inadequate installation and/or remediation of the members," not "flood-induced settlement or from the floodwaters."[18] And the letter stated that "[t]he pier at the northeast corner of the front porch is leaning as a result of long term, historical differential settlement," but "[t]he pier at the northwest corner of the front porch has sunk as a result of flood-induced differential settlement."[19] Lastly, Wright stated that "the cracks in the brick veneer below the French doors on the east side of the house are the result of a tree impact and are not related to the floodwaters."[20]

Sometime thereafter, Wright and Colonial received additional information regarding the damage to the property.[21] As a result, another NFIP authorized independent adjustor affiliated with Colonial prepared a revised estimate for covered flood damage to the building in the total amount of $66,204.37, after considering application of the deductible and non-recoverable depreciation.[22] The adjustor prepared a revised proof of loss consistent with the revised building damage estimate, for an additional payment amount of $2,028.50, which Armstrong signed on August 30, 2022.[23] Because the August 30, 2022 proof of loss was signed after the proof-of-loss deadline,[24] Wright obtained from FEMA a limited waiver of the proof-of-loss requirement for the additional undisputed amounts contained in the untimely August 30, 2022 proof of loss.[25] Wright issued the additional payment.[26]

---

[17] R. Doc. 23-15 at 2.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] R. Doc. 23-6 at 3.
[22] *Id.*
[23] *Id.* (citing R. Doc. 23-9).
[24] FEMA extended the typical 60-day proof-of-loss deadline to 180 days for Hurricane Ida flood damage claims, making the proof-of-loss deadline on February 25, 2022. *Id.* at 5.
[25] *Id.* at 3.
[26] *Id.*

Colonial again received further information, and the adjustor prepared another revised building damage estimate and proof of loss, this time in the amount of $69,807.35, after considering application of the deductible and non-recoverable depreciation.[27] On October 6, 2022, Armstrong signed the proof of loss for the additional $3,602.98 in building damages.[28] Wright did not make any additional payment at that time.[29]

Subsequently, Colonial prepared a third revised building damage estimate and proof of loss, this time in the amount of $72,672.37, after considering application of the deductible and non-recoverable depreciation.[30] This figure included increased pricing for the additional damages contained in the second revised building damage estimate.[31] On November 17, 2022, Armstrong signed the proof of loss for the additional $6,468.00 (over the $66,204.37 already paid) in building damages.[32] Wright issued payments to Armstrong in the total amount of $6,468.00 for the additional building damages.[33]

In sum, Wright issued payments to Armstrong in the total amount of $72,672.37 for building damages, and $4,893.23 for lost contents, as reflected in the third proof of loss.[34] Wright has no additional signed, sworn proof-of-loss documents in its file relating to Armstrong's claim.[35]

---

[27] *Id.* at 4.
[28] *Id.* (citing R. Doc. 23-11).
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.* (citing R. Doc. 23-12).
[33] *Id.*
[34] *Id.* (citing R. Doc. 23-12).
[35] *Id.* at 5.

Armstrong filed this suit against Wright on August 25, 2023, alleging that Wright breached the insurance policy by failing to pay an adequate amount to cover his losses.[36] Wright now moves for summary judgment, arguing that Armstrong's lawsuit was untimely filed.[37]

## II.    LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

---

[36] R. Doc. 1. Armstrong also alleged claims under Louisiana's bad-faith penalty statutes, La. R.S. 22:1892 and 22:1973. *Id*. Those claims were dismissed with prejudice on Wright's consent motion to dismiss. R. Doc. 14 (citing R. Doc. 13).

[37] R. Doc. 23. Wright also argues that Armstrong did not submit a timely, signed, and sworn proof of loss for additional amounts he now claims are owed. R. Doc. 23-1 at 12-18. In response, Armstrong contends that Wright, with FEMA's approval, waived the proof-of-loss requirement. R. Doc. 24 at 3-4, 7-8 (citing R. Doc. 24-2, an email attaching a proof-of-loss waiver). Wright counters that the waiver was limited only to the August 20, 2022 proof of loss and that Armstrong did not dispute that part of Wright's statement of uncontested facts. R. Doc. 26 at 2-6. Because Armstrong filed only the email and not the actual waiver into the record, the Court is unable to determine whether the waiver was limited, as Wright contends, or global, as Armstrong says. Nevertheless, the Court need not reach the proof-of-loss issue because it holds that Armstrong's lawsuit was untimely filed.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue,

the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Time Bar

Wright, citing 42 U.S.C. § 4072 and the "Suits Against Us" section of the SFIP, argues that Armstrong's breach-of-contract claim is time-barred because he failed to file suit within one year of the mailing of the November 8, 2021 partial-denial letter.[38] In opposition, Armstrong argues that Wright should be estopped from invoking the statutory one-year limitations period because Wright continued to adjust the claim after November 8, 2021.[39] Wright replies, arguing that its continued consideration of Armstrong's claims after issuance of the November 8, 2021 partial-denial letter does not equate to a waiver of the limitations period, which is mandated by federal law.[40] Wright's position is correct.

Section 4072 provides that:

> In the event the program is carried out as provided in section 4071 of this title, the Administrator shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and ***upon the disallowance by the Administrator of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Administrator***, may institute an action against the Administrator on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in the controversy.

---

[38] R. Doc. 23-1 at 18-23.
[39] R. Doc. 24 at 4-7.
[40] R. Doc. 26 at 6-9.

42 U.S.C. § 4072 (emphasis added). The "Suits Against Us" section of the SFIP essentially incorporates § 4072 into the policy and provides:

> You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within 1 year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the covered property was located at the time of loss. This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.[41]

Under both § 4072 and the SFIP, the November 8, 2021 partial-denial letter triggered the one-year statute of limitations for Armstrong to file suit against Wright. In fact, that letter explicitly informed Armstrong that "Federal law permits you to file suit in the Federal District Court where the damage occurred within one year of when your insurer first denied all or part of your claim."[42] It also stated that Armstrong could file an appeal, but that "[f]iling an appeal does not extend the one-year timeframe to file suit against your insurer."[43] In *Cohen v. Allstate Insurance Company*, the Fifth Circuit recognized that the SFIP's limitations period, which is also stated in § 4072, must be strictly construed, and a disallowance of all or part of a claim always starts the clock. 924 F.3d 776, 780 (5th Cir. 2019). Indeed, in *Cohen*, as here, the insurer continued to adjust the claim after issuance of the partial denial. *See Cohen v. Allstate Ins. Co.*, 2018 WL 1144761, at *7 (S.D. Tex. Mar. 2, 2018), *aff'd*, 924 F.3d 776. Nevertheless, the Fifth Circuit, strictly construing the applicable law, held that the limitations period began to run from the issuance of the partial-denial letter. *Cohen*, 924 F.3d at 780-82. Accordingly, Armstrong's breach-of-contract claim, which was filed more than a year after issuance of the first partial-denial letter, is time-barred.

---

[41] R. Doc. 23-5 at 21-22.
[42] R. Doc. 23-14 at 4.
[43] *Id.*

### III.     CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Wright's motion for summary judgment (R. Doc. 23) is GRANTED, and Armstrong's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 30th day of October, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE